IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SIMON POSEN,<br><br>               Plaintiff,<br><br>vs.<br><br>J. MICHAEL OZIER; TOLLIVER<br>LAW FIRM, P.C.,<br><br>            Defendants. | CV 17-07-BLG-SPW-TJC<br><br><br>**ORDER AND**<br>**FINDINGS AND**<br>**RECOMMENDATION OF**<br>**U.S. MAGISTRATE JUDGE** |

Plaintiff Simon Posen ("Posen") brings this action against Defendants J. Michael Ozier and the Tolliver Law Firm, P.C. ("Defendants") for legal malpractice based on their representation of him in an underlying breach of contract action. (Doc. 10.)

Presently before the Court are Defendants' Motion to Dismiss and Defendants' Motion for Judicial Notice of Adjudicative Facts. (Docs. 6, 8.) The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and are fully briefed and ripe for the Court's review. (Docs. 7, 9, 11, 15-17.)

Having considered the parties' submissions, the Court **GRANTS** Defendants' Motion for Judicial Notice of Adjudicative Facts, and **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED**.

# I. MOTION FOR JUDICIAL NOTICE

Defendants move the Court, under Federal Rule of Evidence 201, to take judicial notice of Posen's bankruptcy proceedings in Case No. 15-12859-MEW-5, filed in the United States Bankruptcy Court for the Southern District of New York, including all documents and adjudicative facts contained therein.  (Doc. 8.)  In his response brief, Posen does not object to the Court taking judicial notice of the bankruptcy proceedings.  (Doc. 11.)

On a party's request, a court must take judicial notice of an adjudicative fact not subject to reasonable dispute if supplied with the necessary information.  Fed. R. Evid. 201.  A fact is not subject to reasonable dispute if it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Because the filings in the bankruptcy proceeding are matters of public record and their authenticity is not subject to reasonable dispute, their existence is subject to judicial notice.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 756 n.6 (9th Cir. 2006); *United States ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly, the Court grants Defendants' Motion for Judicial Notice of Adjudicative Facts, and takes judicial notice of Posen's prior bankruptcy proceedings.

## II.    MOTION TO DISMISS

### A.    BACKGROUND FACTS

On June 13, 2013, Posen was sued by Stuart Simonsen in the District of Montana for breach of contract (the "Simonsen Action").  (Doc. 10 at ¶ 11.)  Posen hired Defendants to represent him in the Simonsen Action in late November 2013.  (*Id.* at ¶ 13.)   Posen's primary defense was that the contract at the center of the breach of contract claim was a forgery.  (*Id.* at ¶ 12.)  Posen alleges Defendants committed legal malpractice during the course of the litigation, which culminated in an unfavorable ruling to Posen that irretrievably undermined his defense in the case.  (*Id.* at ¶¶ 26-37.)

As a result of the unfavorable ruling and likelihood that Posen would be exposed to significant liability in the Simonsen Action, Posen hired new counsel, and filed for Chapter 11 bankruptcy in the Southern District of New York.  (Doc. 10 at ¶¶ 41-42.)  Upon the filing of the bankruptcy case, the Simonsen Action was stayed in the District of Montana.

Posen submitted schedules of assets and liabilities to the bankruptcy court.  (*Id.* at ¶ 42; Doc. 7-2.)  The schedules indicated Posen had $28,481,219.36 in assets, and $30,555,894.88 in liabilities.  (Doc. 7-2 at 1.)  In his Schedule F, Posen listed the Simonsen claim in the contingent, unliquidated, and disputed amount of

$15,863,616.08. (*Id.* at 17.) Posen did not include a potential malpractice action against Defendants in any of his schedules. (Doc. 7-2.)

During the bankruptcy, the Simonsen Trustee[1] filed a proof of claim asserting an unsecured claim in the amount of $9,332,538.84, plus damages and pre- and post- judgment interest. (Doc. 7-6 at ¶ 22.) The Simonsen Trustee also filed a motion to lift the automatic stay to allow the Simonsen Action to go forward. (Doc. 7-1 at 13.)

Posen objected to both filings. (Doc. 7-3, 7-4.) In his opposition to the motion to lift the stay, Posen argued it would be extremely prejudicial to his estate and creditors to allow the Simonsen Action to proceed. Posen stated "the Simonsen Claim is by far the largest claim filed against the Debtor's estate. . . If this claim were to be allowed based upon the proceedings in the Montana Action, it would adversely impact other unsecured creditors, whose distributions from the estate would be unfairly diminished." (Doc. 7-4 at ¶ 35.) Posen sought an adjudication of the Simonson claim, and a determination of the validity of the underlying contract, in the New York Bankruptcy Court, without regard to the adverse pretrial orders of the Montana District Court. (Doc. 7-4 at ¶ 34.)

---

[1] On January 10, 2014, Stuart Simonsen filed for Chapter 7 bankruptcy in the District of Montana. (*See* Doc. 7-6 at ¶ 21.)

On the eve of the hearing on the motion to lift the automatic stay, Posen reached a settlement of the Simonsen claim.  (Doc. 7-6 at ¶ 24.)  The parties agreed to settle the case for $615,000.00.  (Doc. 7-6 at ¶ 24.)  Thereafter, Posen filed a motion with the bankruptcy court seeking approval of the settlement.  (Doc. 7-1 at 19.)

Posen also moved to dismiss the bankruptcy case.  (Doc. 7-6.)  In the motion to dismiss, Posen stated the biggest issue confronting him when he filed for bankruptcy was the Simonsen Action, "which had the potential of overwhelming the Debtor's remaining assets and dramatically impacting recovery to the Debtor's other general unsecured creditors."  (*Id.* at ¶ 30.)  Posen had also previously obtained approval from the bankruptcy court to settle a potential $1.75 million dollar claim by Steven Ackerman and Elisha Rothman for $110,000.00.  Posen explained in his motion to dismiss that he had thus "accomplished what he set out to do upon commencing his bankruptcy case," including the resolution of his "pending litigation matters."  (*Id.* at ¶ 2.)

The bankruptcy court approved the settlement of the Simonsen Action and dismissed the case.  (Docs. 7-1 at 20; 7-7.)  No plan was ever filed or confirmed. (Doc. 7-1.)

Less than six months later, Posen brought the instant action against Defendants for legal malpractice stemming from their representation of him in the

Simonsen Action.  (Doc. 1.)  Posen seeks damages in the amount of $1,644,351.22 plus pre-judgment interest.  (Doc. 10 at 20.)

## B.     ANALYSIS

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint.  *Levitt v. Yelp! Inc.*, 2014 WL 4290615, *10 (9th Cir. 2014).

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). There is an exception to this rule, however, where a court takes judicial notice of matters of public record. *Id.* at 688-89. Taking judicial notice does not convert a motion to dismiss into one for summary judgment. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.,* 547 F.3d 943, 955 (9th Cir. 2008).

A defendant may raise the affirmative defenses of lack of standing and estoppel by motion to dismiss under Rule 12(b)(6). *See Jones v. Bock,* 549 U.S. 199, 215 (2007) (a complaint may be subject to dismissal under Rule 12(b)(6) if the face of the pleadings establish the affirmative defense); *Coble v. DeRosia,* 823 F.Supp.2d 1048, 1050 (E.D.Cal.2011) (noting judicial estoppel is properly classified as an affirmative defense); *Johnson v. First Fed. Bank of Cal.*, 2008 WL 682497, *2 (N.D. Cal. Mar. 10, 2008) (stating that where a complaint on its face reveals that the plaintiff lacks standing, a motion to dismiss under Rule 12(b)(6) is proper) *citing Sacks v. Office of Foreign Assets Control,* 466 F.3d 764, 771 (9th Cir. 2006).).

Defendants argue that, because Posen failed to disclose the instant malpractice claim in his bankruptcy schedules, his claim is barred. Defendants

contend Posen lacks standing because any malpractice claim Posen may have would have remained property of the bankruptcy estate. Defendants also argue Posen should be judicially estopped from bringing this action due to his failure to schedule the malpractice claim.

Posen counters that he has standing because when his bankruptcy case was dismissed, all assets, including the malpractice claim, reverted to him by operation of 11 U.S.C. § 349(b)(3). Posen further argues that judicial estoppel is not appropriate, because even though he did not schedule the malpractice claim, neither the parties nor the bankruptcy court relied on his schedules.

### 1.     Standing

When a debtor files a bankruptcy petition, an estate is automatically created that is comprised of all property of the debtor, including all legal claims the debtor has as of the time of filing. 11 U.S.C. § 541(a); *Sierra Nevada Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986) ("The scope of section 541 is broad, and includes causes of action."). Debtors are also required to properly schedule all assets, including causes of action. 11 U.S.C. § 521; *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001). Once an estate is created, the debtor no longer has standing to pursue claims that are part of the estate. 11 U.S.C. § 541(a); *Sierra Nevada Switchboard Co.*, 789 F.2d at 706-708.

Here, Posen does not dispute that the instant malpractice claim accrued before he filed for bankruptcy, and that he failed to include the claim in his schedules. (*See* Doc. 16 at 6.) The issue, therefore, is whether the claim reverted to Posen when his bankruptcy case was dismissed, or whether the claim remained property of the estate because Posen failed to disclose it in his schedules.

The United States Supreme Court recently explained there are three possible outcomes in Chapter 11 cases: (1) a bankruptcy court confirmed plan; (2) conversion of the case to a Chapter 7 proceeding for liquidation of the business and distribution of remaining assets; or (3) dismissal of the case. *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 979 (2017). The Court stated "dismissal typically 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case' – in other words, it aims to return to the prepetition financial status quo." [2] *Id.* (citing 11 U.S.C. 349(b)(3)).

_____

[2] Defendants argue the Supreme Court's inclusion of the word "typically," means dismissal does not always revest property of the estate. (Doc. 17 at 8.) This is true. The Supreme Court indicated that the Bankruptcy Code permits the bankruptcy court to alter §349(b)'s restorative consequences "for cause." *Czyzewski*, 137 S.Ct. at 979. The Supreme Court did not state, however, that the failure to schedule an asset changes the operation of §359(b). *See Revell v. Morrison Supply Co. LLC*, 501 S.W.3d 255, 262-263 (Tex. App. 2016) ("Nothing in [§349(b)(3)] states that revesting is subject to disclosure requirements. Rather, the section protects the interests of creditors and the bankruptcy process by allowing a court, for cause, to alter the general rule of revesting upon dismissal on a case-by-case basis."). Here, the bankruptcy court's dismissal order is silent regarding reversion of the estate property and does not mention §349(b). (Doc. 7-

In addition, the Bankruptcy Code specifically provides that unless the bankruptcy court "for cause, orders otherwise," a dismissal of a Chapter 11 case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3).

Applying this section, the Second Circuit found that all of the estate's property revests in the debtor by operation of §349(b) upon dismissal of a bankruptcy case, regardless of whether the property was disclosed in the debtor's schedules. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 484-485 (2d. Cir. 2014). In *Crawford*, the plaintiff sued lenders alleging they fraudulently procured a mortgage on her home and wrongfully sought to foreclose on the mortgage. *Id.* at 477. The plaintiff had previously filed for bankruptcy, but did not disclose her legal claims in the bankruptcy proceeding. *Id.* at 480. The bankruptcy case was dismissed without a plan confirmation. *Id.* at 479. The lenders argued plaintiff's undisclosed claims did not revert to her, and therefore she lacked standing. *Id.* at 480. The Second Circuit rejected the lenders' arguments. *Id.* at 484.

The Court found that under the plain language of § 349(b), all assets are revested in the debtor upon dismissal. *Id.* at 484-485. The Court stated that

---

7.) Therefore, the Court finds the bankruptcy court did not alter the normal operation of §349(b) in this case.

§349(b)(3) is broadly worded, and "makes no distinction between those [assets] that were listed in the debtor's schedule of assets and those that were not; what is revested in the immediately-pre-petition owner or owners is 'the property of the estate'. . . Since the dismissal undoes the bankruptcy case, there is, upon dismissal, no longer any bankruptcy estate; and hence, there is no longer any property of the estate." *Id.* Accordingly, "if the debtor owned the property prior to the commencement of the bankruptcy case, a dismissal returns that property to the debtor." *Id.* at 484.[3]

Despite the clear language of § 349(b), Defendants argue Posen's claim did not revest in him, and therefore, he lacks standing. Defendants primarily rely on *Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001) (which held unscheduled assets do not revert to the debtor upon plan confirmation) and *Kunica v. St. Jean Financial, Inc.*, 233 N.R. 46 (S.D.N.Y. 1999) (which held undisclosed property remains property of the estate even after a dismissal).[4] Neither case is controlling here.

---

[3] Although the language of the section is clear, the legislative history of §349 likewise indicates all property reverts upon dismissal, and does not make a distinction between scheduled or unscheduled assets. *See* H.R.Rep. No. 95-595, p. 338 (1977) (stating "[t]he basic purpose of [§349(b)(3)] is to undo the bankruptcy case, as far as practicable, and to restore *all property rights* to the position in which they were found at the commencement of the case.") (emphasis added).

[4] Defendants also cite *In Re Adam*, 2013 WL 5550432, *5-6 (Bankr. C.D. Cal. 2013), *In Re Yack*, 2009 WL 7751419, *6 (B.A.P. 9th Cir. 2009), and *Castro v. Chase Bank USA, N.A.*, 2013 WL 12123690 (C.D. Cal. Mar. 3, 2013). These cases are inapplicable, however, because they involved Chapter 7 bankruptcy cases. *See*

*Cusano* is distinguishable because it dealt with the effect of *plan confirmation* under 11 U.S.C. § 1141, as opposed to dismissal of a bankruptcy case under § 349. *Cusano*, 264 F.3d at 942. Indeed, *Cusano*, does not cite or discuss § 349 at all. Moreover, the Ninth Circuit subsequently indicated that *Cusano* misapplied § 1141(b),[5] and described the opinion as actually being "a judicial estoppel decision." *See In re JZ, LLC,* 371 B.R. 412, 420 (B.A.P. 9th Cir. 2007). Thus, to the extent *Cusano* is applicable, it is in the context of estoppel.

The *Kunica* case is also distinguishable, and has further been roundly criticized in subsequent decisions. In *Kunica*, the Court determined that 11 U.S.C. § 554,[6] which deals with abandonment of estate property, overrides § 349(b)'s

---

*e.g. In re JZ*, 371 B.R. 412, 418-419 (B.A.P. 9th Cir. 2007) (explaining the difference between Chapter 7 and Chapter 11 cases, and noting that "decisions holding that chapter 7 debtors lack standing to sue on a claim owned by the estate are limited to chapter 7 cases").

[5] 11 U.S.C. § 1411(b) provides: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

[6] 11 U.S.C. 554 provides in relevant part:
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

plain language regarding revesting. *Kunica*, 233 B.R. at 53-54. *Kunica* also

applied an unwritten equitable exception to the reversion provision of § 349 on the

basis that the debtor in that case had received "the functional equivalent of a

discharge." *Id.* at 55. The Court noted that even though the debtor's case was

dismissed, it had "obtained its dismissal after its case was fully administered and

all of its assets scheduled." *Id.* Therefore, the Court concluded that in the

particular circumstances of that case, reversion was not appropriate under § 349.

*Id.*

The *Kunica* decision was thoughtfully considered and rejected by the

Second Circuit in *Crawford*. The Second Circuit explained that because "there no

longer remains any 'property of the estate' after a case has been dismissed, §554

has no applicability after a dismissal." *Crawford*, 758 F.3d at 485. *Crawford* also

implied that unless the debtor had obtained relief "tantamount to a discharge,"

*Kunica*'s equitable exception would not apply. *Id.* at 485.

Other courts have likewise rejected *Kunica*, and adopted a plain reading of §

349(b). *See Revell v. Morrison Supply Co., LLC*, 501 S.W.3d 255, 261 (Tex. App.

2016) (stating the holding in *Kunica* is "untethered to the plain and unambiguous

revesting language of section 349(b)(3)"); *Mackall v. JPMorgan Chase Bank, N.A.*,

356 P.3d 946, 950-951 (Colo. App. 2014) (rejecting *Kunica* and holding that when

a bankruptcy case is dismissed, "[a]ll of the property that was transferred from the

debtor to the estate revests in the debtor regardless of whether the debtor disclosed it to the bankruptcy court"); *Ass'n Res. Inc. v. Wall*, 298 Conn. 145 (Conn. 2010) (finding that under § 349(b)(3), "the failure to disclose a cause of action in bankruptcy proceedings does not preclude the assertion of that claim in proceedings instituted after the dismissal of the bankruptcy petition"); *B.N. Realty Assocs. v. Lichtenstein*, 21 A.D.3d 793, (N.Y. App. Div. 2005) (holding that under § 349(b)(3), the dismissal of the defendant's bankruptcy case had the effect "of restoring his standing to assert his alleged counterclaims, defenses and offsets in this action, notwithstanding his failure (which we obviously do not condone) to disclose such matters in the bankruptcy case"); *Wilbern v. Culver Franchising Sys., Inc.*, 2015 WL 5722825, *28 (N.D. Ill., Sept. 29, 2015) ("§ 554 of the Bankruptcy Code dealing with abandonment of property of the estate does not apply to a bankruptcy petition that has been dismissed pursuant to § 349 of the Code; pursuant to § 349(b)(3), a dismissal of a bankruptcy case re-vests the property of the estate in the entity in which such property was vested immediately before the commencement of the case, *i.e.,* the debtor.").

The Court finds the reasoning of the Second Circuit, and other courts that apply the plain language of § 349, persuasive. Accordingly, the Court concludes that under § 349(b)(3), the dismissal of a bankruptcy petition revests all property in the debtor, regardless of disclosure. Concerns regarding Posen's failure to disclose

14

the malpractice claim are more appropriately dealt with under principles of estoppel, rather than standing.  *See In re JZ, LLC*, 371 B.R. at 418 (noting a revested Chapter 11 debtor had standing to sue on causes of action that had been property of the estate, subject to equitable constraints).

Here, Posen's bankruptcy case was dismissed upon his motion.  (Docs. 7-6; 7-7.)  No plan was confirmed, and the Court does not find Posen obtained the functional equivalent of a discharge.  Therefore, the Court finds this case falls squarely within the plain language of § 349(b)(3).  By operation of law, all assets Posen had prior to filing his bankruptcy petition, including the malpractice claims, revested in him when the bankruptcy case was dismissed.  As a result, Posen has standing, subject to equitable principles, as discussed below.

## 2.    Judicial Estoppel

The bankruptcy code requires debtors to schedule their assets and liabilities. 11 U.S.C. § 521(a)(1).  "It is settled that the debtor has a duty to prepare these bankruptcy schedules and statements 'carefully, completely, and accurately,' and bears the risk of nondisclosure."  *In re JZ,* 371 B.R. at 417.  If a debtor fails to schedule a cause of action, the debtor may be judicially estopped from later pursing the claim.  *Ah Quin v. County of Kauai Dept. of Transp.*, 733 F.2d 267, 270 (9th Cir. 2013).  "In the bankruptcy context, the federal courts have developed a basic rule:  If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit

from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Id.*

Judicial estoppel is an equitable doctrine that "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The doctrine's "purpose is 'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (citations omitted). Judicial estoppel is discretionary and applied on a case-by-case basis. *Id.* at 750.

In *New Hampshire v. Maine*, the Supreme Court directed courts to consider three factors when determining whether to invoke judicial estoppel. *Id.* "First, a party's latter position must be 'clearly inconsistent' with its earlier position." *Id.* "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a latter proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* The Supreme Court noted that these factors are not "inflexible prerequisites or

an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.* When considering whether to apply judicial estoppel, the focus is on the integrity of the judicial process, not the effect on the parties. *Ah Quin*, 733 F.3d at 275.

### a. Clearly Inconsistent Positions

In the bankruptcy context, a party takes clearly inconsistent positions by failing to disclose a legal claim to the bankruptcy court, and then subsequently bringing suit on the undisclosed claim. *Hamilton*, 270 F.3d at 784 ("Hamilton clearly asserted inconsistent positions. He failed to list his claims against State Farm as assets on his bankruptcy schedules, and then later sued State Farm on the same claim."); *In re JZ*, 371 B.R. at 420-421 ("In the case of omitted assets in bankruptcy, the initial position is that there is no asset, the later inconsistent position is that there is an asset."). Here, Posen does not contest the fact that he omitted the malpractice claim from his schedules. Therefore, the Court finds it is undisputed Posen took inconsistent positions. As such, the first factor is satisfied.

### b. Judicial Acceptance of Earlier Inconsistent Position

The Ninth Circuit restricts judicial estoppel "to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton*, 270 F.3d at 783. Here, Posen argues the acceptance factor is lacking because his bankruptcy

case was dismissed without a discharge or plan confirmation, and therefore, neither the court nor the parties[7] relied on his schedule of assets. But a bankruptcy court does not have to permanently discharge debts or confirm a plan for the second factor to be satisfied. *Hamilton*, 270 F.3d at 784. "The bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways." *Id.*

Several courts have held that the automatic bankruptcy stay is itself sufficient to satisfy the judicial acceptance requirement for judicial estoppel. In *Swendson v. Ocwen Loan Servicing, LLC*, 2014 WL 1155794 (E.D. Cal. Mar. 21, 2014), for example, the plaintiff failed to disclose potential claims on his bankruptcy schedules, which he later attempted to pursue in federal district court. In finding he was judicially estopped from doing so, the district court found the plaintiff had received the benefit of automatic stays, and the "bankruptcy court had assumed the truth of plaintiff's schedules, which stated that he did not have any potential claims when indeed he did. Therefore, the Bankruptcy Court accepted

---

[7] The doctrine of judicial estoppel is meant to protect the integrity of the judicial system, not the parties. *Ah Quin*, 733 F.3d at 275. *See also Allen v. C & H Distributors, LLC*, 2015 WL 1399683, *2 (W.D. La. Mar. 26, 2015) ("Detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary, as judicial estoppel is meant to protect the judicial system, not the litigants."). Therefore, the extent the parties may have relied on Posen's schedules in the bankruptcy is not necessarily a factor the Court is to consider in determining whether judicial estoppel is appropriate.

Plaintiff's earlier inconsistent position that he did not have potential claims against Defendants." *Id.* at *6. *See also*, *Hannon v. Wells Fargo Bank, N.A.*, 2015 WL 4776305 at *6 (N.D. Cal. Aug. 13, 2015) (granting the benefit of automatic stays was sufficient to satisfy the judicial acceptance requirement); and *Sharp v. Nationstar Mortgage, LLC*, 2014 WL 4365116 at *5 (N.D. Cal. Sept.3, 2014) (same). *But see Boatright v. Aurora Loan Services*, 2012 WL 2792415, *5 (N.D. Cal. July 9, 2012) (stating the automatic stay of proceedings accompanying a bankruptcy filing do not "appear to be sufficient to show that Plaintiff was successful at causing the bankruptcy court to accept his position."); and *Perez v. Wells Fargo Bank, N.A.*, 2011 WL 3809808, *12 (N.D. Cal. Aug. 29, 2011) (same).

In this case, Posen obviously benefitted from the automatic stay. Nevertheless, the bankruptcy court also accepted his inconsistent position in much more substantive ways. For example, in *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988), the Sixth Circuit held that a bankruptcy court's approval of a settlement constitutes judicial acceptance. The Court noted that in bankruptcy proceedings, as opposed to regular civil cases, the bankruptcy court must approve any settlement between the debtor and his creditors as fair and equitable. *Id. See also* Fed. R. Bankr. P. 9019. The bankruptcy court is not permitted to act "as a mere rubber stamp"; instead, it is obligated to apprise itself of the facts and make an

independent determination of fairness.  *Reynolds*, 861 F.2d at 473.  Therefore, the Sixth Circuit explained that "[w]hen an ordinary civil case is settled, there is no 'judicial acceptance,' of anyone's position and thus there can be no judicial estoppel in a later proceeding.  But when a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position."  *Id.*

The Ninth Circuit has similarly noted that a settlement, if it requires court approval, would constitute judicial acceptance.  *See Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996) (noting that obtaining a favorable settlement is equivalent to winning a judgment for purposes of applying judicial estoppel); *In re Laser Land Leveling*, 185 F.3d 867, *2 (9th Cir. 1999) (noting that a favorable settlement is equivalent to a favorable judgment for purposes of judicial estoppel "at least under those circumstances in which a judicial or quasi-judicial body approves the settlement").  *See also NGM Ins. Co. v. Bexar County Co.*, 211 F.Supp.3d 923, 935 (W.D. Tex. 2016) (holding that a bankruptcy court's approval of a settlement under Fed. R. Bankr. P. 9019 is judicial acceptance and warrants the application of judicial estoppel); *Gagne v.*

*Zodiac Maritime Agencies*, 274 F.Supp.2d 1144, (S.D. Cal. 2003) (noting "favorable settlement constitutes judicial reliance").

Here, the bankruptcy court approved two settlements under Federal Rule of Bankruptcy Procedure 9019 during the course of Posen's bankruptcy action. First, Posen requested, and the bankruptcy court approved, the settlement of the $1.75 million dollar Ackerman/Rothman claim for $110,000.00. (Doc. 7-1 at 4, 9; *In re Posen*, Case No. 15-12859-MEW, Docket Nos. 21, 61, Bankr. S.D.N.Y.) Then Posen reached settlement in Simonsen Action and filed a motion for approval, which the bankruptcy court granted on July 13, 2016. (Doc. 7-1 at 19-20; *In re Posen*, Case No. 15-12859-MEW, Docket Nos. 149, 159 Bankr. S.D.N.Y.). In his motion for approval of the Simonsen settlement, Posen implicitly referred to his bankruptcy schedules by stating the Simonsen claim was "by far the largest unsecured claim asserted against the Debtor's estate," and "if the Settlement Agreement is not approved . . . there would be a significant adverse impact on the distributions of other unsecured creditors of the Debtor's estate." (*In re Posen*, Case No. 15-12859-MEW, Docket No. 149, ¶ 32 Bankr. S.D.N.Y.) The Court finds the bankruptcy court's approval of Posen's settlement agreements constitutes judicial acceptance.

Another way the judicial acceptance factor may be satisfied is through the bankruptcy court's approval of a request for dismissal. Under the Bankruptcy

21

Code, the debtor must obtain court approval to dismiss a bankruptcy action. 11

U.S.C. § 1112(b); Fed. R. Bankr. P. 1017(a). In considering whether to dismiss an

action, the bankruptcy court has a duty to consider whether dismissal is in the best

interest of the creditors and the estate. 11 U.S.C. § 1112(b). Because a dismissal,

like a settlement agreement, requires court review and approval, a bankruptcy

court's order dismissing a case at the request of the debtor constitutes judicial

acceptance. *See e.g. Manhattan Ave. Dev. v. Meit*, 224 A.D.2d 191, 192 (N.Y.

App. Div. 1996) (stating bankruptcy court's approval of stipulated dismissal

"inferentially endorsed plaintiff's then position concerning its assets, satisfying the

'prior success' element necessary for judicial estoppel"). *Compare U.S. v.*

*Washington*, 887 F.Supp.2d 1077, 1093 (D. Mont. 2012) (stating that dismissal of

an ordinary civil case under Fed. R. Civ. P. 41(a)(1)(A)(ii) – which does not

require the court' approval – does not amount to acceptance for purposes of

judicial estoppel).

Here, Posen filed a motion requesting the bankruptcy court dismiss his

Chapter 11 case. (Doc. 7-6; *In re Posen*, Case No. 15-12859-MEW, Docket No.

151, Bankr. S.D.N.Y.) In the motion, Posen expressly referred to his inaccurate

schedules by stating they "listed $28.4 million in assets and $30.5 million in

liabilities." (*Id.* at ¶ 13.) On the basis of Posen's representations, the bankruptcy

court found dismissal was in the best interest of Posen and his creditors, and

therefore, granted the motion on July 28, 2016.  (Doc. 7-7; *In re Posen*, Case No. 15-12859-MEW, Docket No. 163, Bankr. S.D.N.Y.)   Accordingly, the Court finds the bankruptcy court's approval of Posen's settlement agreements, along with the court's approval of his request for dismissal, satisfies the second factor.

### c.    Unfair Advantage

When a debtor institutes the bankruptcy process, he "disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets." *Hamilton*, 270 F.3d at 785.  Courts have recognized that when a debtor receives the benefit of an automatic stay under 11 U.S.C. § 362(a), he "would receive an unfair advantage by prosecuting claims against a defendant after failing to disclose those claims in his bankruptcy proceedings."  *Swendsen v. Ocwen Loan Servicing, LLC*, 2014 WL 1155794, *6 (E.D. Cal. March 21, 2014).  *See also Hannon v. Wells Fargo Bank, N.A.*, 2015 WL 4776305, *7 (N.D. Cal. Aug. 13, 2015) (finding in addition to satisfying the judicial acceptance prong, the "automatic bankruptcy stays constitute an unfair advantage and support the application of judicial estoppel where a party seeks to prosecute previously undisclosed claims").

Here, Posen took advantage of the bankruptcy system by obtaining the benefit of staying the Simonsen Action, moving the venue of the case away from the Montana District Court where he had received unfavorable rulings, and then

negotiating a settlement of the case for significantly less than its potential value, all on the basis of bankruptcy schedules that were inaccurate.

Posen has not made any claim that his omission of the malpractice claim from his schedules was inadvertent or mistaken. Instead, he urges the Court to disregard his failure to properly schedule his assets because it only amounted to a 5% understatement of his total estate,[8] and in any event Defendants should be viewed as the beneficiaries of Posen's bankruptcy filing. However, "the integrity of the bankruptcy system must not be overlooked." *Juarez v. Suntrust Mortgage, Inc.*, 2013 WL 1983111, *7 (E. D. Cal. May 13, 2013). Full and honest disclosure by debtors of all their assets is vital to the bankruptcy system. *Hamilton*, 270 F. 3d at 785. "The Courts will not permit a debtor to obtain relief from the bankruptcy by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *Id.* quoting *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 2013). Therefore, the Court declines to adopt Posen's "'no harm, no foul' logic" with regard to his failure to accurately schedule his assets. *Juarez*, 2013 WL 1983111, at 7.

---

[8] Obviously, if Posen had listed the value of his potential malpractice claim as equivalent to the potential value of the loss on the Simonsen claim ($15,863,616.08), it would have constituted much more than 5% of his total estate.

On balance, the Court finds all three *New Hampshire* factors warrant the application of judicial estoppel in this action. The Court, therefore, recommends Defendants' Motion to Dismiss be granted.

## III. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Defendant's Motion for Judicial Notice of Adjudicative Facts (Doc. 8) is **GRANTED.**

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss (Doc. 6) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 4th day of August, 2017.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge